UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICKY L. YOUNG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:14-cv-1056-RLY-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

Report and Recommendation on
Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that plaintiff Ricky L. Young is not disabled.

**Introduction**

Mr. Young applied in April 2011 for Supplemental Security Income disability benefits (SSI) under Title XVI of the Social Security Act. His application alleged a disability onset date of March 7, 2005, but at the administrative hearing he amended his alleged onset date to March 22, 2011, because a final decision denying a prior application for benefits had been issued on March 21, 2011. (*See* R. 50). Acting for the Commissioner of the Social Security Administration following a hearing held November 21, 2012, administrative law judge Tammy Whitaker issued

a decision on January 22, 2013, finding that Mr. Young is not disabled. The Appeals Council denied review of the ALJ's decision on April 25, 2014, rendering the ALJ's decision for the Commissioner final. Mr. Young timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Young contends the ALJ erred in numerous ways, including by failing to order neurological testing, failing to properly analyze his migraine headaches, failing to give appropriate weight to the medical opinions of his treating physician, therapist, and the consultative medical examiners, and failing to obtain testimony from a medical expert on whether under the totality of the medical evidence, any listing was met or medically equaled.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Mr. Young's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Mr. Young is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national

economy. 42 U.S.C. § 1382c(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the

evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

I.  **The ALJ's Sequential Findings**

Mr. Young was born in April 1964, was 46 years old as of his alleged onset date in March 2011, and was 48 years old at the time of the ALJ's decision.

At step one, the ALJ found that Mr. Young had not engaged in substantial gainful activity since his amended alleged onset date. In his work history, Mr. Young was a pipefitter, a die cast machine operator, and a framing carpenter—jobs that are generally performed at the medium or heavy level of exertion. (R. 73). He last worked as a pipefitter in 2005, at a heavy level of exertion.

At step two, the ALJ identified a large number of severe impairments, generally within the categories of (a) cervical and lumbar back impairments (degenerative disc disease of cervical and lumbar spines, scoliosis, lumbar spine arthritis and facet arthropathy, and cervical spondylosis), (b) digestive system impairments (irritable bowel syndrome, diverticulosis, hernias, gastroesophageal reflux disease, and history of abdominal pain and vomiting), (c) respiratory impairments (asthma and bronchitis), and (d) mental impairments (PTSD, bipolar disorder, depression, anxiety, and pain disorder). His severe impairments also included fibromyalgia, migraine headaches, chronic tinnitus causing headaches, and a history of a skull and jaw fracture. (R. 21).

At step three, the ALJ evaluated the impairments against a wide variety of listings and found no listings were met. (R. 28-33). The ALJ next determined Mr. Young's residual functional capacity, *i.e.*, his maximum work capacity despite his impairments and their effect on his functioning. The RFC is at the light level for purposes of sit/stand/walk requirements and lifting and carrying abilities, but contains numerous additional restrictions, including an option to change positions nearly at-will, postural limits, environmental restrictions, limits to simple, routine, and repetitive tasks, work that allows the claimant to be absent at least one day per month and to be off-task five percent of the day in addition to regular breaks, and work requiring no more than superficial interaction with the public, coworkers, or supervisors. (R. 33-34).

With this RFC, the vocational expert testified that Mr. Young was not capable of performing his past relevant work but that other jobs existed in significant numbers in the state of Indiana that he could perform. Those jobs were as an assembler, hand packager, and inspector. The ALJ credited the VE's testimony and accordingly found at step five that Mr. Young is not disabled.

## Analysis

Mr. Young contends the ALJ erred in a variety of ways. First, he contends the ALJ had insufficient information to decide disability because she did not obtain cognitive testing for Mr. Young. Second, he contends the ALJ was required to obtain additional expert evaluation of the medical evidence to support her decision that no listing was met or medically equaled. Third, he contends the ALJ did not

6

adequately analyze whether his migraine headaches met a listing. Fourth, he contends the ALJ did not give appropriate weight to the opinions of medical sources. The court addresses each contention in order below.

I.  **The ALJ was not required to obtain additional testing.**

Mr. Young asserts the ALJ should have supplemented the record by ordering him to undergo testing for a cognitive disorder that may have resulted from a head injury he suffered in 2004 from an assault in which his skull was fractured and jaw was broken. The state agency consultative psychiatrist (Dr. Kenneth McCoy) noted in his mental status examination report dated May 11, 2011, that Mr. Young "may have also suffered cognitive impairments related to the head injury, although standardized assessment of cognitive functioning would be required for a formal diagnosis." He included at Axis I[1] the statement: "R/O (meaning "rule out") Cognitive Disorder NOS" (meaning "not otherwise specified"). (R. 386). Mr. Young's psychiatrist had noted in a record dated February 15, 2011, that Mr. Young's therapist reported an old head injury from an attack, though Mr. Young had not mentioned it. The psychiatrist wrote that cognitive deficits could be "secondary to this." (R. 306). Based on these two records, Mr. Young argues the

---

[1] A mental status examination report typically includes a summary diagnostic listing on five axes, Axis I through Axis V. "The five axis model is designed to provide a comprehensive diagnosis that includes a complete picture of not just acute symptoms but of the entire scope of factors that account for a patient's mental health." *See* http://www.psyweb.com/DSM_IV/jsp/Axis_I.jsp. Axis I reports a patient's diagnoses. *Id.*

7

ALJ committed reversible error by not ordering him to submit to some form of standardized cognitive assessment.

As a general matter, an ALJ has discretion to decide if the record is sufficiently complete to make a disability determination. All possibilities do not have to be exhausted, and the court must respect the agency's judgment about how much evidence is enough. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). *See also Poyck v. Astrue,* 414 Fed. App'x 859, 861 (7th Cir. 2011) ("This court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures (including additional consultative examinations) are needed in order to accomplish this goal."); *Nicholson v. Astrue,* 341 Fed. App'x 248, 254 (7th Cir. 2009) ("[T]he question before us is whether the ALJ's decision to rest on the record that he had was an abuse of discretion.")

The ALJ had before her years' worth of medical records, the results of state agency physical and psychological consultative examinations, reports of mental status examinations by Mr. Young's therapists, and the benefit of reviews of those records by state agency medical experts. One of the state agency experts, psychologist Donna Unversaw, expressed her disagreement with Dr. McCoy's conclusions as a whole and found it significant that Mr. Young had filed for disability benefits before, with two ALJ decisions denying benefits, including the most recent one in March 2011. (R. 395). She opined that Dr. McCoy's opinion regarding Mr. Young's mental functioning was inconsistent with the evidence in the file which, in her view, reflected a higher level of activity and functioning than Mr.

8

Young had exhibited during his examination by Dr. McCoy. (*Id.*) Dr. Unversaw opined Mr. Young was capable of even semi-skilled tasks, while Dr. McCoy thought Mr. Young may be unable to perform even simple, repetitive tasks in a competitive work setting.

Because of the breadth of information in the record, the fact the ALJ evaluated Dr. McCoy's opinion, and the fact that Mr. Young's own psychiatrist noted his old head injury and apparently did not find necessary the sort of formal cognitive assessment Mr. Young says the ALJ should have ordered, the court is not convinced the ALJ failed to ensure a sufficiently complete record to fairly evaluate whether Mr. Young is disabled. Moreover, Mr. Young has been represented since July 2011 by the same law firm. Before now his counsel never suggested to the ALJ that the record was incomplete and a formal cognitive assessment such as that mentioned by Dr. McCoy in May 2011 should be ordered. When a claimant is represented by counsel, the ALJ "is entitled to assume" the claimant "is making his strongest case for benefits." *Nicholson,* 341 Fed. App'x at 253 (citing *Glenn v. Sec'y of Health and Human Servs.,* 814 F.2d 387, 391 (7th Cir. 1987)). Under all of these circumstances, the court finds no error based on the absence of a formal cognitive assessment in the record.

## II. The ALJ was not required to summon a medical expert.

Mr. Young's contention that the ALJ "failed to obtain medical opinion to interpret medical evidence and as to possible equaling of the listings" (Dkt. 14 at p.23) is without merit. His argument is based on inaccurate representations about

9

the contents of the administrative record.  He says that there were no physical or psychological examinations performed by Social Security examiners, but that is not true.  In fact, his earlier argument about the need for a cognitive assessment relied on a statement made by the state agency psychologist who performed a mental status examination.  In addition, a physical examination was done by state agency physician James R. Lewis.  (R. 387-91).

      Mr. Young also says that the state agency reviewing physicians only found insufficient evidence whether Mr. Young's impairments were of listing-level severity and "there are no opinions regarding meeting or equaling a listing by anyone throughout the entire record." (Dkt. 14 at p. 25).  That's not true either.  Mr. Young does not cite to any document indicating reviewing physicians only found insufficient evidence to make a decision whether listings were met or medically equaled.  In addition, the record reflects that reviews of the evidence by medical experts were conducted at both the initial and reconsideration stages of the case. (*See e.g.,* R. 103 and R. 116).  The record also contains a completed Psychiatric Review Technique Form, which reports that no mental health listings were met or medically equaled.  (R. 397-410).

      Mr. Young has a back-up argument.  He contends that, even if expert evaluation of the medical evidence was made by state agency reviewers, the ALJ should have summoned a medical expert to testify at the hearing because a "multitude of records" were added after the state agency reviews.  (Dkt. 14 at p. 23). This argument is undeveloped and generic.  Where additional medical evidence is

10

received, an ALJ is required to obtain an updated expert opinion only when, in the ALJ's judgment, the new evidence may change the prior opinions that the impairments were not of listing-level severity. SSR 96-6p. Here, Mr. Young does not identify what specific information in these "multitude of records" should have caused the ALJ to seek out additional medical expert evaluation. The court finds no error requiring remand based on the ALJ's failure to summon a medical expert at the hearing.

### III. The ALJ's step three evaluation of Mr. Young's migraine headaches is supported by substantial evidence.

Mr. Young contends the ALJ did not properly evaluate his migraine headaches against the listings. The ALJ evaluated the headaches against listing 11.03 (nonconvulsive epilepsy), which she found to be the most analogous listing. She concluded this listing was not met because the record did not contain a "detailed description of a typical headache pattern, including all associated phenomena . . . occurring more frequently than once a week in spite of at least three months of prescribed treatment" and because "there is no evidence of alteration of awareness with significant interference with activity during the day (significant break or cessation of activity during the day—for example, need for darkened, quiet room, and lying down without moving)." (R. 30).

Mr. Young asserts that, contrary to the ALJ's discussion, there is evidence about his migraine headaches that could satisfy the listing, and the ALJ was forbidden from evaluating that evidence without the additional input of a medical expert. The court finds, however, that there is substantial evidence to support the

11

ALJ's conclusion that Mr. Young's migraine headaches were not of listing-level severity.  First, there is very little in the way of a description of migraine headaches or treatment.  Mr. Young's brief lists pages and pages of records he says demonstrate the frequency or worsening of his headaches (Dkt. 14 at p. 17), but he did not inform the court that most of these page references are duplicates of one another.  In fact, the first evaluation of the possibility of migraine headaches occurred in June 2010, and the medical follow-up for migraines is very slim.

Mr. Young complained of headaches to his personal care physician (Dr. Brinkruff) in June 2010, and said he had had headaches for years that are sharp and throbbing and are aggravated by bright lights.  (R. 515). Dr. Brinkruff referred Mr. Young to a neurologist (Dr. Curtis), who saw him the next month (July 2010).  Mr. Young described to Dr. Curtis that he has had migraine headaches most of his life, and they had worsened since his 2004 head trauma.  He said they are bifrontal, throbbing, associated with nausea and photophobia (light sensitivity), and phonophobia (noise sensitivity), but without "aura" (dramatic changes in vision) or numbness or weakness.  (R. 563).  Dr. Curtis prescribed medication (Relpax) to treat any acute migraine if one occurred. (R. 564).  Mr. Young also described non-migraine headaches, which Dr. Curtis believed were induced by medication Mr. Young took for his fibromyalgia, but could be treated with a medication to help both those non-migraine headaches and fibromyalgia.

The evidence shows Mr. Young had two follow-up appointments with Dr. Curtis, once in October 2011 (R. 476-77) and about six months later in April 2012

(R. 474-75). These records do not establish a typical pattern of migraine headaches over time or their frequency. Nor do they address "alterations of awareness" or the manner in which any migraines interfere with daily life. Rather, the first follow-up appointment in October 2011 simply carried forward the same history, included an updated physical examination, and noted that the prescriptions would be renewed. (R. 476-77). The April 2012 record similarly carried forward the same history information, but noted Mr. Young's complaint that the Relpax "did not improve his headache," and the doctor's change of prescription in response to that complaint. (R. 474-475). No other specialist evaluated or treated Mr. Young's migraine headaches.

Given this rather slim evidence of specialized evaluation and treatment for migraine headaches and the lack of detailed information contained in those records, the court cannot find the ALJ erred in concluding that the medical evidence failed to establish that Mr. Young's migraines possibly made him presumptively disabled as measured against the requirements of neurological listing 11.03.

### IV. The ALJ's weighing of medical source opinions is supported by substantial evidence.

Mr. Young's final assertion of error is that the ALJ erred by not giving "any amount of significant weight" to various medical source opinions in the record. (Dkt. 14 t p. 11). This argument—by its very description—is an impermissible request for the court to reweigh the evidence. Mr. Young cannot point to any medical opinion the ALJ failed to evaluate. Nor can he argue that the ALJ's reasons for the weight she accorded to various opinions are irrational. He

complains about the ALJ's evaluation of opinions by his treating physician (Dr. Brinkruff), his therapist (Mr. Madris), and those of the consultative physician and psychologist (Drs. Lewis and McCoy), but the court must conclude that the ALJ gave sufficient reasons to support her evaluations of these opinions.

The ALJ's decision contains a fairly detailed evaluation of each one of these opinions.  As for Dr. Brinkruff, the ALJ noted the doctor had written exactly the same statement about Mr. Young's ability to maintain gainful employment three different times, and that all referred to a functional capacity evaluation from 2008 which showed Mr. Young could no longer perform his factory job, was not trained to do clerical work, but had capabilities at the light level of exertion.  The ALJ's RFC does not require heavy or medium factory work or semi-skilled clerical work.  Mr. Madris, a therapist, completed a mental impairment questionnaire whose contents were inconsistent with Mr. Young's own testimony about his functioning, or so it was rational for the ALJ to conclude.  (R. 41).  As for Dr. Lewis, who stated in his report that he "find[s] [Mr. Young] is disabled," the ALJ noted the report itself does not contain specific findings to support that conclusion, and state agency reviewing physicians disagreed and opined that Mr. Young can work so long as certain restrictions are made to his work requirements and environment.  (R. 38).  Finally, the ALJ determined Dr. McCoy's statement about Mr. Young's inability to attend to work tasks on a sustained basis similarly was not consistent with his mental status examination, a conclusion that was shared by state agency reviewers.  (R. 39-40).

The court's limited scope of review does not permit it to find reversible error here.  *See Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000) (court may not substitute its judgment for the ALJ's judgment by reweighing evidence, or resolving conflicts, or reconsidering the facts or witness credibility); *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997) (where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict).

There is no doubt Mr. Young, his primary care physician, his therapist, and even two state agency consultative physicians believe—for various reasons—he should be found to be disabled.  But there was contrary evidence in the record, and the ALJ provided a legally sufficient basis for her evaluation of the evidence and for her conclusion that so long as Mr. Young's work environment and tasks are substantially restricted as described in the RFC, he can work.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Mr. Young is not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 § U.S.C. 636(b)(1) and Fed. R. Civ. P. 72(b).  The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure.  Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: August 14, 2015

                                            Debra McVicker Lynch
                                            United States Magistrate Judge
                                            Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system